UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE MARIE JOHNSON,

            Plaintiff,                      Civil Action No. 11-14644

        v.                         District Judge Thomas L. Luddington
                                    Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]**

Plaintiff Rose Marie Johnson appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disabled widow's benefits. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment (Dkts. 9, 10). For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's decision that Plaintiff did not have a severe impairment or combination of impairments on or before the date last insured ("DLI"). Moreover, this Court finds that the ALJ properly followed the mandates of 20 C.F.R. § 404.1529 and S.S.R. 96-7p regarding Plaintiff's credibility. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 10) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I.  BACKGROUND

Plaintiff is the widow of a deceased, injured worker and has attained the age of 50.  (Tr. 14.)

Administrative Law Judge (ALJ) Julia D. Gibbs determined that Plaintiff met the non-disability

requirements for disabled widow's benefits set forth in § 202(e) of the Social Security Act.  (*Id.*)

Plaintiff alleges that she cannot work due to back pain, crooked spine, and complications

associated with a 2005 automobile accident.  (Tr. 41-42, 45.)

### A.  Procedural History

On January 30, 2007, Plaintiff applied for disabled widow's benefits, asserting that she

became unable to work on January 1, 2001.  (Tr. 12.)  The Commissioner initially denied Plaintiff's

disability application on June 15, 2007.  (Tr. 54.)  Plaintiff then requested an administrative hearing,

and on September 30, 2009, she appeared with counsel before ALJ Gibbs, who considered her case

*de novo*.  (Tr. 12-20.)  In a January 20, 2010 decision, ALJ Gibbs found that Plaintiff was not

disabled.  (*See* Tr. 19.)  The ALJ's decision became the final decision of the Commissioner on

August 17, 2011, when the Social Security Administration's Appeals Council denied Plaintiff's

request for review.  (Tr. 1-6.)  Plaintiff filed this suit on October 21, 2011.  (Dkt. 1, Compl.)

### B.  Medical Evidence

In March 2005, Plaintiff was involved in a motor vehicle accident.  X-rays taken following

the accident showed lumbar spondylosis, degenerative disc disease with slight retrolisthesis of L1-

L2, and degenerative scoliosis.  (Tr. 221-23.)  The x-rays indicated no osteopenia or osteoporosis.

(*Id.*)  Consulting physician, Dr. Charles Safley, observed no lumbar tenderness, crepitus, serious

deformity, weakness, or paresthesias.  (Tr. 222.)  Forward flexion and extension of the lumbar spine

was normal.  (*Id.*)  Lateral bending was painless and elicited no weakness or paresthesias.  (*Id.*)

2

Over the course of his treating relationship with her, primary care physician, Dr. Damay Pandrangi, diagnosed Plaintiff with diabetes mellitus, hypertension, hyperlipidemia, hypothyroidism, cervical radiculopathy, obesity, gastroesophageal reflux disease, osteopenia, and eczema.   Dr. Pandrangi also noted a history of recurrent diverticulitis. (Tr. 144.) During an August 2, 2006 office visit with Dr. Pandrangi, Plaintiff reported no complaints.  (*Id*.)  Dr. Pandrangi noted Plaintiff's diabetes and hypertension were also "well controlled."  (*Id*.)

On June 6, 2006, Dr. Pandrangi referred Plaintiff for a bone density study.  (Tr. 160.) Plaintiff's score was -1.5, indicating osteopenia.  (Tr. 160.)  Fracture risk for individuals in this classification is considered "moderate."  (*Id*.)  Guidelines recommended treatment for patients with T-scores of -1.5 and below with risk factors, and -2.0 without risk factors.  (*Id*.)  Based on these results, Dr. Pandrangi recommended follow-up testing in two years.  (*Id*.)

On November 1, 2006, Dr. Pandrangi conducted a follow-up visit with Plaintiff.  (Tr. 143-44.)  Plaintiff denied any complaints.  (Tr. 143.)  Plaintiff's blood sugars were normal.  (*Id*.) Plaintiff needed refills on her prescriptions and was due for a diabetic eye examination.  (*Id*.) Plaintiff reported no increase in fatigue.  (*Id*.)  She also indicated no bladder or bowel problems, and there was a record of a recent, normal colonoscopy.  (*Id*.)  A physical examination revealed no abnormalities.  (*Id*.)  Dr. Pandrangi indicated that Plaintiff's diabetes was "well controlled" with medication, and her hypertension was also "stable."  (*Id*.)

During 2005-06, dermatologist Dr. Kevin Gaffney noted that Plaintiff had a few benign regions, keratosis, and a cyst.  (Tr. 185, 186, 192, 195.)  He recommended that Plaintiff use moisturizer and sun screen.  (*Id*.)  Dr. Gaffney also reported that Plaintiff had a history of malignant melanoma; however, there is no additional medical evidence of this condition or treatment in the

record.  (Tr. 187.)

On February 2, 2007, Dr. Pandrangi conducted a physical exam of Plaintiff which indicated no abnormalities.  (Tr. 141.)  In addition, Dr. Pandrangi reported that Plaintiff's diabetes was "well controlled" and her hypertension was "stable."  (*Id*.)  The notes from this office visit also indicated that Plaintiff wanted Dr. Pandrangi to attribute her diabetes to "stress from her husband's [1998] death."  Dr. Pandrangi, however declined to do this, explaining that he only started treating Plaintiff in 1999.  (*Id*.)  Moreover, Dr. Pandrangi stated that he had "no clue" about her prior medical history, only that she had a strong family history of diabetes.  (*Id*.)

On May 4, 2007, Dr. Pandrangi examined Plaintiff.  (Tr. 217.)  He noted good sugar counts and HgA1c, and that Plaintiff's lipid profile was within normal levels.  (*Id*.)  Dr. Pandrangi also reported that Plaintiff's "[l]abs looked good."  (*Id*.)  Although Plaintiff complained of blurred vision, her physical examination was normal in all areas.  (*Id*.)  Dr. Pandrangi recommended that Plaintiff follow-up with her eye doctor regarding her complaints of blurred vision.  (*Id*.)

Also in May 2007, Plaintiff was referred to Dr. Abdullah Raffee for a physical examination.  (Tr. 173-75.)  Plaintiff reported that her diabetes had not been troubling her.  (Tr. 173.)  Plaintiff also denied any headaches, dizziness or significant hospitalizations because of her hypertension.  (*Id*.)  Plaintiff was taking medication for her hypothyroidism, GERD, and hyperlipidemia.  (*Id*.)  The only noted complaint about her diverticulitis was that Plaintiff was not able to eat seeds or nuts. (*Id*.)  Dr. Raffee reported that Plaintiff had a normal gait and was not using any accessory devices.  (Tr. 175.)  Moreover, he noted that Plaintiff moved "quite easily from the chair to the examining table."  (*Id*.)  Finally, Dr. Raffee reported that all of Plaintiff's joints were essentially within "normal limits." (*Id*.)

4

On June 14, 2007, Disability Determination Services (DDS) medical consultant Heidi Schonle conducted a case analysis wherein she concluded that Plaintiff's impairments were non-severe. (Tr. 176-77.) She noted that Plaintiff attributed her physical conditions to stress from her husband's death in 1998; Plaintiff, however, did not allege any psychological impairments. (*Id*.) Ms. Schonle also concluded that Plaintiff had not taken any medications for depression, nor were her activities of daily living limited in any way. (*Id*.)

On October 15, 2007, Dr. Pandrangi conducted a physical examination of Plaintiff. He reported everything was normal except some tenderness in the C6-C7 area. Dr. Pandrangi's assessment was cervical radiculopathy and advised Plaintiff to apply heat and showed her some exercises to do at home. (Tr. 215.) He advised Plaintiff to continue her diabetes medications. Dr. Pandrangi also indicated that Plaintiff's hypertension was stable. (*Id*.) Plaintiff was dieting, exercising and losing weight. (*Id*.)

### C. Testimony at the Hearing Before the ALJ

#### 1. *Plaintiff's Testimony*

Plaintiff testified that she lived with her son and that he did most of the lifting. (Tr. 41.) Plaintiff indicated that she could lift a gallon of milk. (*Id*.) Plaintiff testified that if she lifted too much weight, her hips and back would "go out," she would get "stuck," and she would be unable to stand up. (Tr. 42.) When this happened, Plaintiff reported that she went to the doctor and got medication. (*Id*.) It would take approximately three to four days before she felt better. (*Id*.) Plaintiff testified that she did some walking and was able to drive. (Tr. 43.) Plaintiff reported that an automobile accident in 2005 resulted in a "crooked" spine. (Tr. 44.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) and Supplemental Security Income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).[1]

ALJ Gibbs determined that Plaintiff was the unmarried widow of a deceased insured worker and had attained the age of 50. (Tr. 14.) Plaintiff, therefore, met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. (*Id.*) The prescribed period ended on October 31, 2007. (*Id.*)

At step one, ALJ Gibbs found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2001. (Tr. 14.) At step two, the ALJ concluded that Plaintiff had the following medically determinable impairments: hypertension, diabetes, osteopenia, high cholesterol, acid reflux, diverticulitis, dry skin, and hyperthyroidism. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, had significantly limited (or was expected to significantly limit) Plaintiff's ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (*Id.*) As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 19.)

---

[1] In disabled widow's cases, a sixth step is added to the sequential evaluation process. As established in S.S.R. 91-3p, if a claimant is found to be disabled after application of the five step sequential evaluation, a sixth determination is made regarding the claimant's ability to perform "any" gainful activity. A widow is not considered disabled at this step if she is capable of performing a wide range of sedentary work. S.S.R. 91-3p. It is well established that the standard of disability is stricter for widow's benefits than it is for wage earners. *See Dorton v. Heckler*, 789 F.2d 363, 365 (6th Cir. 1986); *Wokojance v. Weinberger*, 513 F.2d 210, 212 (6th Cir.), *cert. denied*, 423 U.S. 856 (1975).

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

2001).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).   Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509;  *Rogers*, 486 F.3d at 247.

## IV.  ANALYSIS

As mentioned, at step two, ALJ Gibbs found that Plaintiff suffered from hypertension, diabetes, osteopenia, high cholesterol, acid reflux, diverticulitis, dry skin, and hyperthyroidism. (Tr. 14.)   She found at step two that none of these impairments, alone or in combination, had significantly limited (or was expected to significantly limit) Plaintiff's ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments.  (*Id*.)   Although Plaintiff may have some mild degree of disability, this Court concludes that substantial evidence supports the ALJ's decision that Plaintiff was unable to present evidence to support the necessary level of severity to sustain a claim.

Plaintiff first argues that the ALJ erred in weighing the medical opinions of her treating physicians.   (Pl.'s Mot. Summ. J. at 6-9.)   Both Plaintiff and the ALJ use the plural treating "*physicians*" when discussing the weight given to the medical opinion evidence; however, only one physician, Dr. Damay Pandrangi, established the requisite longitudinal relationship with Plaintiff to qualify as a treating physician under the regulations.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . .   Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship. . . .   The question is whether [treating source] had the ongoing relationship

9

with [the claimant] to qualify as a treating physician at the time he rendered his opinion."); *see also* 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . reports of individual examinations, such as consultative examinations or brief hospitalizations."). And the Sixth Circuit has held that the treating-source rule only applies, as its name suggests, to treating-source opinions. *See Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, No. 12-5179, 2012 WL 4460654, at *2 (6th Cir. Sept. 27, 2012); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Plaintiff does not specify what part of Dr. Pandrangi's "opinion" the ALJ incorrectly discounted, nor does she explain what limitations identified in the opinion (if any) should have been considered but were not, nor does she identify any objective medical evidence to support the degree of limitation alleged. The Court has carefully reviewed the evidence pertaining to Dr. Pandrangi's treatment and the ALJ's consideration of that evidence and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a severe impairment. Indeed, nothing in Dr. Pandrangi's treatment notes indicate that Plaintiff's condition was severe in nature. To the contrary, almost all of Dr. Pandrangi's comments during the relevant period indicated normal, stable functioning. (Tr. 141, 143, 144, 217.) The Court also finds it significant that Plaintiff's treating physician noted no functional limitations at any time during the relevant time period.

Additionally, the ALJ's decision is supported by the opinion of the state agency consultant who reviewed Plaintiff's medical records and determined that Plaintiff had no severe impairment and that her activities of daily living were not limited in any way. (Tr. 176.) The ALJ is entitled to give the opinions of state agency medical consultants great weight if they are supported by the

evidence. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (2009); S.S.R. 96-6p, 61 Fed.Reg. 34,466 (1996); *see also Burton v. Astrue*, No. 09-196-KSF, 2010 WL 1257757, at *2 (E.D. Ky. Mar. 26, 2010). Here, Plaintiff simply fails to point to any evidence that contradicts the findings of the state agency consultant. Moreover, the record does not include an opinion from a treating source, or an examining source, indicating that Plaintiff is disabled, or identifying limitations greater than those found by the state agency consultant. Without a differing opinion, the ALJ was entitled to rely on the findings of the state agency consultant. *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005).

Plaintiff additionally claims that the ALJ erred in assessing her credibility. (Pl.'s Mot. Summ. J., at 9-13.) For the reasons that follow, this Court disagrees.

A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ, however, must not reject a claimant's "statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other

11

symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

Applying these regulations and rulings to this case, the ALJ properly evaluated Plaintiff's credibility. The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible to the extent they are inconsistent with the finding that the claimant has no severe impairment or combination of impairments . . . ." (Tr. 17.) The ALJ considered the entire case record and gave specific reasons for doubting Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms and pain. (Tr. 17-19.) ALJ Gibbs discussed each of Plaintiff's impairments and noted why the medical record did not support her subjective allegations of pain. (*See* Tr. 17-19.) Significantly, Plaintiff's counsel agreed during the hearing that Plaintiff's alleged impairments, other than her osteopenia, caused no significant limitations. (Tr. 39-40.) With respect to Plaintiff's osteopenia, the ALJ specifically noted that the record evidence did not support more than a minimal restriction on her ability to perform basic work activities. (Tr. 19.) In support, the ALJ noted that the term osteopenia is mentioned only one time in the medical record. Moreover, while the diagnosis of osteopenia indicates a moderate risk of fractures, none of Plaintiff's doctors ever mention any functional

limitations as a result of this diagnosis.  The Court also notes that in its independent review of the record, it did not locate any evidence of Plaintiff ever complaining of any functional limitations — other than her testimony at the administrative hearing — resulting from her osteopenia. Additionally, the x-ray associated with Plaintiff's accident did not show osteopenia or osteoporosis. (Tr. 221-23.)  Moreover, consulting physician, Dr. Charles Safley, observed no lumbar tenderness, crepitus, serious deformity, weakness, or paresthesias.  (Tr. 222.)  Based on the foregoing, this Court concludes that the ALJ properly evaluated Plaintiff's credibility.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court concludes that substantial evidence supports the decision of the ALJ that Plaintiff did not have a severe impairment or combination of impairments on or before her DLI.  Moreover, this Court finds that the ALJ properly followed the mandates of 20 C.F.R. § 404.1529 and S.S.R. 96-7p regarding Plaintiff's credibility. Therefore, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  February 12, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 12, 2013.

s/Jane Johnson
Deputy Clerk

14